# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **CENTENNIAL MOLDING, LLC,** | ) | **CASE NO. 8:05CV175** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **RONALD S. CARLSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

This matter is before the Court on a Motion for Summary Judgment filed by Plaintiff Centennial Molding, LLC ("Centennial").  (Filing No. 20).  Centennial seeks summary judgment of non-infringement of claims 1-24 of U.S. Patent. No. 6,135,324. (*Id.*). The Complaint seeks a declaration of non-infringement and invalidity of a patent owned by Defendant Ronald S. Carlson.  (Filing No. 1, hereafter "Complaint").  This matter is before the Court pursuant to 28 U.S.C. §§ 1338(a), 1391(c), 2201, and 2202, as a declaratory judgment arising under patent law.  The matter has been fully briefed, and the Court has considered the evidence submitted.  For the reasons stated below, Centennial's Motion for Summary Judgment will be denied.

## Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003).  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## Background

Plaintiff Centennial is a limited liability company existing under the laws of Nebraska, with its principal place of business in Hastings, Nebraska. (Complaint ¶2). Centennial manufactures and sells liquid storage and dispensing tanks. (*Id.*). Centennial's tanks allegedly infringe a patent owned by Defendant Ronald Carlson ("Carlson"). (*Id.*). The patent at issue is U.S. Patent No. 6,135,324 ("the '324 Patent"), which has now been superseded by a reissued patent, U.S. Patent No. RE38,785 ("the '785 Patent"). (Filing No. 23, hereafter "Joint Stipulation" ¶¶2,3). The '324 Patent was issued on October 24, 2000, and contains twenty-four claims. (Filing No. 22-3). The original inventor of the '324 Patent was Anthony L. Schmitt, and he assigned to Carlson his entire right and interest in

2

both the '324 Patent and in the patent application for the '785 Patent, pending in January 2003. (Joint Stipulation ¶3).

Centennial filed a Complaint for declaratory judgment of non-infringement and patent invalidity of the '324 Patent on April 20, 2005. The Complaint alleges: "Defendant, on at least two occasions, through its attorneys, has written to Plaintiff and alleged that the patent-in-suit has been infringed by Plaintiff." (Complaint ¶5). Centennial initially named Tote-A-Lube, a Minnesota Corporation, as the Defendant. Tote-A-Lube filed a 12(b)(5) motion to dismiss for insufficiency of process (Filing No. 6), and the Court denied the motion. (Filing No. 18). By joint stipulation (Filing No. 23), Ronald Carlson, the owner of the disputed patent, was substituted as the defendant, and Tote-A-Lube was dismissed from the case. (Filing No. 28).[1] Ronald Carlson is now the sole defendant in this case. Carlson filed a Counterclaim against Centennial on September 8, 2005, alleging that Centennial's liquid storage tanks infringe Carlson's patent. (Filing No. 24). Centennial moved for summary judgment of non-infringement of claims 1-24 of the '324 Patent on August 29, 2005. (Filing No. 20).

The following facts relating to the '324 Patent are not disputed.[2] The '324 Patent relates to a unit that stores and dispenses liquid. (Filing No. 21, hereafter "Support Brief" at 1, ¶1; Filing No. 29, hereafter "Opposition Brief" at 3). Claim 1 of the '324 Patent is an independent claim, and claims 2-6 are dependent on claim 1. (Support Brief at 1, ¶3; Opposition Brief at 3). Claim 7 is an independent claim, and claims 8-15 are dependent

[1]The parties stipulate that Tote-A-Lube is not the owner of the '324 Patent and is not a distinct corporation. (Stipulation ¶1).

[2]Carlson does not dispute Centennial's Statement of Undisputed Facts; however, Carlson contends the '785 Patent supersedes the '324 Patent, making Centennial's statements relevant to the '785 Patent rather than the '324 Patent. (Opposition Brief at 3, ¶¶1,3).

on claim 7.  (Support Brief at 1, ¶4; Opposition Brief at 3).  Claim 16 is an independent

claim, and claims 17-20 are dependent on claim 16.  (Support Brief at 1, ¶5; Opposition

Brief at 3). Finally, claim 21 is an independent claim, and claims 22-24 are depending on

claim 21.  (Support Brief at 1, ¶6; Opposition Brief at 3).

Claim 1 reads:

> A container for storing a liquid comprising: upright walls surrounding a chamber, a bottom wall located in a horizontal plane joined to the upright walls to retain liquid in the chamber, a top wall joined to the upright walls to close the top of the chamber, said top wall having a plurality of linear ribs and the bottom wall having a plurality of grooves having sizes and shapes that correspond to the size and shapes of the linear ribs that permit two of said container to be stacked with the ribs of one container to be mated with grooves in the other container, corners joining adjacent portions of the upright walls, a liquid fill opening in the top wall adjacent one corner, cap means attachable to the top wall to close the fill opening, said one corner having a bottom portion located above the horizontal plane of the bottom wall providing a space below the one corner vertically aligned with the liquid fill opening to allow a liquid to be placed in a chamber of a container having a fill opening below the space below the bottom portion of said one corner, and valve means mounted on an upright wall adjacent the bottom wall for controlling the flow of liquid from the chamber.

('324 Patent at 11).  Claim 7 reads:

> A container for storing a liquid comprising: an upright wall surrounding a chamber, a bottom wall located in a horizontal plane joined to the upright wall to retain a liquid in the chamber, a top wall joined to the upright walls to close the top of the chamber, said upright wall having at least one corner, a liquid fill opening in the top wall adjacent said one corner, cap means attachable to the top wall to close the fill opening, said one corner having a bottom portion located above the horizontal plane of the bottom wall providing a space below said one corner vertically aligned with the liquid fill opening to allow a liquid to be placed in the chamber of a container having a fill opening below the space below the bottom portion of said one corner.

(*Id.*).  Claim 16 reads:

> Liquid storing and dispensing units comprising: a first container having an upright wall surrounding a chamber for storing liquid, a bottom wall and a top wall joined to the upright wall, said upright wall having at least one corner, a

4

liquid fill opening in the top wall adjacent said one corner, cap means attachable to the top wall to close the fill opening, and means for draining liquid from the chamber, a second container supported on the top wall of the first container having an upright wall surrounding a chamber for storing a liquid, a bottom wall and top wall joined to the upright wall of the second container, said upright wall of the second container having at least one corner vertically aligned with the one corner of the first container, a liquid fill opening in the top wall of the second container to allow liquid to be placed in said chamber of the second container, cap means for closing the liquid fill opening of the second container, and means for draining liquid from the chamber of the second container, said on corner of second container having a bottom portion located above the horizontal plane of the bottom wall of the second container to provide a space between the first and second containers so that the first container can be filled with liquid using the fill opening of the first container without removing the second container from the first container.

(*Id.* at 12).  Claim 21 reads:

Liquid storing and dispensing units comprising: a first container having an upright wall surrounding a chamber for storing a liquid, a bottom wall and a top wall joined to the upright wall, said upright wall having at least one corner (sic), a liquid fill opening in the top wall adjacent said one comer (sic) and cap means attachable to the top wall to close the fill opening, a second container supported on the top wall of the first container having an upright wall surrounding a chamber for storing a liquid, a bottom wall and a top wall joined to the upright wall of the second container, said upright wall of the second container having at least one comer (sic) vertically aligned with the one comer (sic) of the first container, a liquid fill opening in the top wall of the second container to allow liquid to be placed in said chamber of the second container and cap means for closing the liquid fill opening of the second container, said one comer (sic) of the second container having a bottom portion located above the horizontal plane of the bottom wall of the second container to provide a space between the first and second containers so that the first container can be filled with liquid using the fill opening of the first container without removing the second container from the first container.

(*Id.*).

Centennial argues that its liquid storage and dispensing unit neither literally infringes the '324 Patent nor infringes the '324 Patent under the Doctrine of Equivalents.  (Support Brief at 11-16).  On the other hand, Carlson claims that there is both literal infringement and infringement under the Doctrine of Equivalents.  (Opposition Brief at 7-19).  Carlson contends that the following material facts are in dispute: 1) "whether the specification

5

supports only those 'fill openings' located 'adjacent' to 'corners;'" 2) "the scope and meaning of the term 'adjacent;'" 3) "whether the accused product has a 'space' 'adjacent' the tank's 'corner' that is 'vertically aligned' with its 'fill opening;'" and 4) "the scope and meaning of the term 'corner.'" (*Id.* at 3,4,5). If the Court grants Centennial's motion for summary judgment despite Carlson's arguments, Carlson requests a continuance to allow further discovery pursuant to Fed. R. Civ. Pro. 56(f). (*Id.* at 19). Finally, Carlson requests oral argument. (*Id.* at 21).

## Discussion

As a preliminary matter, the Court notes that the '785 Patent was issued on August 30, 2005, the day after Centennial moved for summary judgment. (Opposition Brief at 2; Filing No. 30-3, "'785 Patent"). The effect of reissue patents on pending litigation is governed by 35 U.S.C. § 252, which states, in pertinent part:

> The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, *but in so far as the claims of the original and reissued patents are substantially identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.* (emphasis added).

The twenty-four claims of the '324 Patent are identical to claims 1-24 of the '785 Patent. (Filing No. 22-3, hereafter "'324 Patent;" Filing No. 30-3, "'785 Patent").[3] Therefore, claims

---

[3]A minor typographical error was corrected in the '785 Patent. (Filing No. 29). Otherwise, claims 1-24 of the '785 Patent are identical to the '324 Patent. (Opposition Brief at 2). The '785 Patent contains a total of thirty-eight claims. ('785 Patent).

1-24 of the '785 Patent have the '324 Patent's effective date of October 24, 2000, and constitute a continuation of the '324 Patent.[4]

### Literal Infringement

Courts employ a two-step analysis to determine whether an accused product literally infringes a claim. *PC Connector Solutions, LLC v. Smartdisk Corp.,* 406 F.3d 1359, 1362 (Fed. Cir. 2005). The Court must first determine the scope and meaning of the claim. *Id.* Claim construction is a question of law. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir.1996). Second, the properly construed claim must be compared to the accused product. *P.C. Connector,* 406 F.3d at 1362. Whether the accused product infringes the asserted claim "is a question of fact, to be submitted to a jury." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).

Centennial asserts that its tank does not infringe the '785 Patent: 1) "because the tank of Centennial does not have a fill opening formed in the top wall of the tank adjacent one corner;" and 2) because the Centennial tank "does not have a structure wherein the one corner has a bottom portion located above the horizontal plane of the bottom wall to provide a space below the one corner vertically aligned with the liquid fill opening." (Support Brief at 12). On the other hand, Carlson claims that Centennial's product literally infringes claims 1-24 of the '785 Patent because the "*fill opening* is clearly *adjacent* to the tank's *corner.*" (Opposition Brief at 8). Carlson further asserts that Centennial's tank literally infringes the '785 Patent because the space in the lower portion of Centennial's tank "is *vertically aligned* with the tank's *fill opening.*" (Opposition Brief at 10).

---

[4]The Court will refer to the disputed patent as the '785 Patent throughout this Memorandum and Order, and any references that Centennial makes to the '324 Patent will be construed as referring to claims 1-24 of the '785 Patent.

In *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005), the Federal Circuit Court of Appeals stated that claims "are generally given their ordinary and customary meaning." (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  The Federal Circuit further stated that "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  (*Phillips,* 415 F.3d at 1313).  In cases where the ordinary meaning of a claim term is readily apparent to lay judges, a court may apply the "widely accepted meaning of commonly understood word," using *general purpose* dictionaries.  (*Id.* at 1314).  Each party concedes that the term "adjacent" is a commonly understood term rather than a technical one, and the parties have provided the Court with various dictionary definitions of the term "adjacent." (Opposition Brief at 9; Filing No. 34, hereafter "Reply Brief" at 4).

*The American Heritage Dictionary* (2d College ed. 1982) defines "adjacent" as "close to; lying near; near or close to but not necessarily touching."  (Opposition Brief at 9).  *The Merriam-Webster's Collegiate Dictionary* defines the term as "immediately proceeding or following" and "may or may not imply contact but always implies absence of anything of the same kind in between."  (Filing No. 35-3).  *Roget's II: The New Thesaurus* describes "adjacent" as "sharing a common boundary" or "not far from another in space, time, or relation." (Filing No. 35-4).  WordReference.com English Dictionary defines the word "adjacent" as "near or close to but not necessarily touching", "nearest in space or position; immediately adjoining without intervening space", "abutting, adjacent, conterminous, contiguous."  (Filing No. 35-5).

Although the definition of "adjacent" is not precise, a comparison of the various dictionary definitions provided to the Court demonstrates that the term "adjacent" does not

8

have as narrow a definition as Centennial suggests.  Each definition of "adjacent" makes it clear that two objects, in this case the corner and the fill opening, need not actually touch or come into contact with the other to qualify as adjacent.  Instead, to qualify as adjacent, the corner and fill opening need only be close or near to each other.  Centennial suggests: "If Plaintiff's fill opening is located approximately midway between the outside edge of the tank's corner and the center of the tank, Plaintiff's fill opening cannot be any more adjacent to the corner than it can be adjacent to the center of the tank."  (Reply Brief at 4).  The Court does not disagree with Centennial on this point; however, the fact that the fill opening may be adjacent to the center of Centennial's tank does not preclude the fill opening from being adjacent to the corner of the tank as well.

Page four of the brochure for Centennial's tank contains a picture of a man filling Centennial's tank through the fill opening.  (Filing No. 30-4 at 4).  The fill opening in that picture appears to be "near" and  "close" to the corner or "not far from" the corner, which is consistent with the above definitions of "adjacent."  It is the Court's duty to construe the scope and meaning of the claim, and based on the dictionary definitions, the Court concludes the term "adjacent" as used in the '785 Patent has its plain and ordinary meaning of "close to; lying near; near or close to but not necessarily touching."  *The American Heritage Dictionary* (2d College ed. 1982).

Centennial also asserts that its tank "does not have a structure wherein the one corner has a bottom portion located above the horizontal plane of the bottom wall to provide a space below the one corner vertically aligned with the liquid fill opening." (Support Brief at 12).  Centennial places emphasis on the word "corner," again arguing that the fill opening of Centennial's tank is not located in the corner.  (*Id.*).  Conversely, Carlson focuses on the "vertical alignment" aspect, arguing:

> [T]he surrounding claim language necessitates the conclusion that the breadth of the *space* contemplated by the invention extends to a point *adjacent* to the *corner* - namely, if the *fill opening* is *adjacent* the one *corner*, and the *space* is to be *vertically aligned* with the *fill opening*, it follows that the *space* must also be *adjacent* the one *corner*.

(Opposition Brief at 11). The Court finds Carlson's reasoning persuasive on this issue and agrees with Carlson's claim construction. *See ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (stating "the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of [a claim's] terms").

The question of whether the accused product, Centennial's tank, infringes the '785 Patent is a question for the jury. *See Middleton, Inc. v. Minn. Mining & Mfg. Co.,* 311 F.3d 1384, 1387 (Fed. Cir. 2002) (noting the application of the claim to an accused product is a question of fact). Based on the Court's construction of the disputed claims of the '785 Patent, the Court concludes that a jury could find that Centennial's tank literally infringes the '785 Patent. Therefore, the Court finds that there are genuine issues of material fact remaining for the jury, making summary judgment inappropriate.

### Doctrine of Equivalents

In addition to literal infringement, an accused product may infringe a patent claim under the "Doctrine of Equivalents." Under this doctrine, an accused product that does not infringe a patent claim literally, may still infringe the patent claim if the accused product "performs substantially the same function in substantially the same way to produce the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608 (1950). "The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 733 (2002). To establish infringement under the doctrine, the accused product

10

must contain each limitation of the claim or its equivalent. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997). "An element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial." *Aquatex Industries, Inc. v. Techniche Solutions*, 419 F.3d 1374 (Fed. Cir. 2005).

Under prosecution history estoppel, a patent owner may be estopped from relying on the Doctrine of Equivalents if he or she made a "narrowing amendment for purposes of patentability, or clearly and unmistakably surrender[ed] subject matter by arguments made to an examiner." *Festo Corp.*, 535 U.S. at 736. Centennial contends that the Doctrine of Equivalents is unavailable to Carlson because the original inventor filed an amendment after claims 1-18 of the original twenty-three claims were rejected by the examiner. (Filing 22-7 at 39).[5] The examiner determined that these claims were anticipated by a prior patent, U.S. Patent No. 5,307,956 (the "Richter Patent"). (*Id.* at 40). The rejection of these claims was based on 35 U.S.C. § 102(b), which states:

> A person shall be entitled to a patent unless...the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States....

In response to the rejection, the original inventor, Anthony Schmitt, amended the claim language to demonstrate the differences between his tank and the Richter Patent. (Filing No. 22-8 at 45-52).

---

[5]Carlson correctly points out that Centennial relied on an incorrect statement of law in its Support Brief. Centennial cites *Festo v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000) (*en banc*), and alleges that "when narrowing amendments are made to a claim limitation for reasons related to patentability, such as when an amendment is made to avoid a prior art rejection, however, the doctrine of equivalents is completely unavailable with respect to the amended limitation." (Support Brief at 13). As Carlson notes, the United States Supreme Court rejected this "complete bar" standard in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002), and replaced it with a "flexible bar" approach.

Centennial cites various portions of the remarks section of the amendment which discuss a fill opening and space vertically aligned in the corner.  (Support Brief at 14-15). Centennial alleges that the prosecution history of the '324 Patent, which is now claims 1-24 of the '785 Patent, "clearly point[s] out that the applicant relied upon the corner positioning of the fill opening in an effort to avoid the [Richter Patent]."  (*Id.* at 15).[6]  Therefore, Centennial alleges that Carlson "cannot now argue that a fill opening, which is not located in the corner, as argued by the applicant as being important, is equivalent to the fill opening located in the corner as required by" claims 1-24 of the '785 Patent.  (*Id.*).  Centennial further argues that the location of the fill opening in Centennial's tank is "substantially different" from a fill opening located in the corner.  (*Id.* at 15-16).

Carlson relies on *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722  (2002), where the Supreme Court determined that an amendment made for purposes of patentability does not completely bar the patentee from relying on the doctrine of equivalents.  Instead, the Court stated "the patentee should bear the burden of showing that the amendment does not surrender the particular equivalent in question."  *Festo*, 535 U.S. at 740.  The Court further stated that when an amendment is made for purposes of the patentability, "the question is not whether estoppel applies but what territory the amendments surrendered," and the patent holder must "demonstrate that the narrowing amendments did not surrender the particular equivalents at issue."  *Id.* at 741.

For estoppel to apply, the prosecution history must "evince a clear and unmistakable surrender of subject matter," "not an equivocal one."  *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373 (Fed. Cir. 1999) (citing *Litton Sys., Inc. v. Honeywell,*

_____

[6]The Richter Patent relates to a five gallon nestable plastic syrup container for use in a post-mix beverage dispensing system.  *See* U.S. Patent No. 5,307,956.

*Inc.*, 140 F.3d 1449, 1458 (Fed.Cir.1998)). "To determine what subject matter has been relinquished, an objective test is applied, inquiring whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir.1998) (en banc).

Carlson contends that the remarks section of the amendment distinguished the Richter Patent "based on its lack of *vertical alignment* of its *space* and *fill opening*, not based on anything related to the *fill opening* itself being located or confined to the *corner* of the tank. (Opposition Brief at 16). Carlson further argues that "the wording of the claim language pertaining to the location of the *fill opening* - that it be *adjacent* one *corner* - was never amended during the prosecution of [c]laims 1-24...." (Opposition Brief at 16). Therefore, Carlson argues he "has not surrendered any subject matter relating to the *adjacent* location of the *fill opening* with respect to [c]laims 1-24, and that [he] is entitled to the full range of equivalents of the *adjacent-fill opening* claim limitation. (*Id.* at 17).

The Court agrees with Carlson that the relevant amendment language focuses on the vertical alignment of the fill opening with the space, so that the stacked tanks can be filled without unstacking the tanks, distinguishing it from the Richter Patent. (Filing No. 22-8 at 48). The Court finds that Carlson did not surrender the equivalent at issue. *See Festo,* 535 at 738 (stating "there is no reason to "foreclose claims of equivalence for aspects of the invention that have only a peripheral relation to the reason the amendment was submitted"). Therefore, the Court finds that Carlson is not barred from relying on the Doctrine of Equivalents with respect to the location of the fill opening. Material issues of fact remain for the jury regarding whether the accused product "performs substantially the same function in substantially the same way to produce the same result," and whether the difference between the location of the fill opening on Centennial's tank and '785 Patent

13

constitutes an "insubstantial alteration" not captured in drafting the original patent claim. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608 (1950); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 733 (2002), *see also See Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed. Cir.1998) (stating that the "determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact").

IT IS ORDERED:

1.     Plaintiff's Motion for Summary Judgment of Noninfringement of Claims 1-24 of U.S. Patent. No. 6,135,324 (Filing No. 20) is denied.

Dated this 21st day of November, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge