## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CENTENNIAL MOLDING, LLC, | ) | CASE NO. 8:05CV175 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| RONALD S. CARLSON, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on a Renewed Motion for Partial Summary Judgment filed by Plaintiff Centennial Molding, LLC. (Filing No. 40). The matter has been fully briefed, and the Court has considered the evidence submitted. For the reasons stated below, the motion will be denied.

### FACTS

The following facts are undisputed. U.S. Patent No. 6,135,324 (" '324 Patent") relates to a liquid storage and dispensing unit. (Filing No. 42-4 (" '324 Patent")). Patent '324 was issued on October 24, 2000, with 24 claims, and it has been reissued as U.S. Patent No. RE38,785 (" '785 Patent"). (Filing No. 23 ("Joint Stipulation") ¶2). The 24 claims of the '324 Patent are identical to claims 1-24 of the '785 Patent. ('324 Patent; Filing No. 30-3, " '785 Patent").

Claim 1 of the '785 Patent is an independent claim, and claims 2-6 are dependent on claim 1. Claim 7 is an independent claim, and claims 8-15 are dependent on claim 7. Claim 16 is an independent claim, and claims 17-20 are dependent on claim 16. Finally, claim 21 is an independent claim, and claims 22-24 are dependent on claim 21.

Claim 1 reads:

A container for storing a liquid comprising: upright walls surrounding a chamber, a bottom wall located in a horizontal plane joined to the upright walls to retain liquid in the chamber, a top wall joined to the upright walls to close the top of the chamber, said top wall having a plurality of linear ribs and the bottom wall having a plurality of grooves having sizes and shapes that correspond to the size and shapes of the linear ribs that permit two of said container to be stacked with the ribs of one container to be mated with grooves in the other container, corners joining adjacent portions of the upright walls, a liquid fill opening in the top wall adjacent one corner, cap means attachable to the top wall to close the fill opening, said one corner having a bottom portion located above the horizontal plane of the bottom wall providing a space below the one corner vertically aligned with the liquid fill opening to allow a liquid to be placed in a chamber of a container having a fill opening below the space below the bottom portion of said one corner, and valve means mounted on an upright wall adjacent the bottom wall for controlling the flow of liquid from the chamber.

('785 Patent).  Claim 7 reads:

A container for storing a liquid comprising: an upright wall surrounding a chamber, a bottom wall located in a horizontal plane joined to the upright wall to retain a liquid in the chamber, a top wall joined to the upright walls to close the top of the chamber, said upright wall having at least one corner, a liquid fill opening in the top wall adjacent said one corner, cap means attachable to the top wall to close the fill opening, said one corner having a bottom portion located above the horizontal plane of the bottom wall providing a space below said one corner vertically aligned with the liquid fill opening to allow a liquid to be placed in the chamber of a container having a fill opening below the space below the bottom portion of said one corner.

(*Id.*).  Claim 16 reads:

Liquid storing and dispensing units comprising: a first container having an upright wall surrounding a chamber for storing liquid, a bottom wall and a top wall joined to the upright wall, said upright wall having at least one corner, a liquid fill opening in the top wall adjacent said one corner, cap means attachable to the top wall to close the fill opening, and means for draining liquid from the chamber, a second container supported on the top wall of the first container having an upright wall surrounding a chamber for storing a liquid, a bottom wall and top wall joined to the upright wall of the second container, said upright wall of the second container having at least one corner vertically aligned with the one corner of the first container, a liquid fill opening in the top wall of the second container to allow liquid to be placed

2

in said chamber of the second container, cap means for closing the liquid fill opening of the second container, and means for draining liquid from the chamber of the second container, said on corner of second container having a bottom portion located above the horizontal plane of the bottom wall of the second container to provide a space between the first and second containers so that the first container can be filled with liquid using the fill opening of the first container without removing the second container from the first container.

(*Id.*).  Claim 21 reads:

Liquid storing and dispensing units comprising: a first container having an upright wall surrounding a chamber for storing a liquid, a bottom wall and a top wall joined to the upright wall, said upright wall having at least one corner (sic), a liquid fill opening in the top wall adjacent said one comer (sic) and cap means attachable to the top wall to close the fill opening, a second container supported on the top wall of the first container having an upright wall surrounding a chamber for storing a liquid, a bottom wall and a top wall joined to the upright wall of the second container, said upright wall of the second container having at least one comer (sic) vertically aligned with the one comer (sic) of the first container, a liquid fill opening in the top wall of the second container to allow liquid to be placed in said chamber of the second container and cap means for closing the liquid fill opening of the second container, said one comer (sic) of the second container having a bottom portion located above the horizontal plane of the bottom wall of the second container to provide a space between the first and second containers so that the first container can be filled with liquid using the fill opening of the first container without removing the second container from the first container.

(*Id.*).

Centennial Molding, Inc. ("Centennial") moved for summary judgment on August 29, 2005, seeking summary judgment of noninfringement of Claims 1-24 of the '324 Patent. (Filing No. 20).  On November 21, 2005, the Court found that there were material issues of fact remaining and denied Centennial's summary judgment motion.  (Filing No. 39). Centennial filed a Renewed Motion for Partial Summary Judgment of Noninfringement of Claims 1-24 of the '785 Patent  (Filing No. 40), once again claiming that Centennial's product does not infringe Claims 1-24 of the '785 Patent literally or under the Doctrine of Equivalents. (Filing No. 41 ("Support Brief") at 13-18).

3

Defendant Ronald Carlson ("Carlson") opposes Centennial's motion, arguing that the following facts are in dispute between the parties: 1) whether the specification supports only those fill openings located adjacent to corners; 2) whether the accused product has a fill opening adjacent to the corner; 3) whether the accused product has a space adjacent the tank's corner that is vertically aligned with its fill opening; 4) what is the scope and meaning of the term 'corner;' 5) the history of the '785 Patent; and 6) whether there is entitlement to intervening rights. (Filing No. 43 "Opposition Brief" at 3-6).

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A

"genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## DISCUSSION

### *Literal Infringement*

Courts employ a two-step analysis to determine whether an accused product literally infringes a claim. *PC Connector Solutions, LLC v. Smartdisk Corp.,* 406 F.3d 1359, 1362 (Fed. Cir. 2005). First, the court must determine the scope and meaning of the claim. *Id.* Claim construction is a question of law. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir.1996). Second, the properly construed claim must be compared to the accused product. *P.C. Connector,* 406 F.3d at 1362. Whether the accused product infringes the asserted claim "is a question of fact, to be submitted to a jury." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).

Centennial again argues that Centennial's tank "does not have a fill opening formed in the top wall of the tank adjacent one corner." (Support Brief at 14). The Court has previously construed the term "adjacent" as used in the '785 Patent to mean "close to; lying near; near or close to but necessarily touching." (Filing No. 39 "Order" at 9). Centennial claims that certain of the comments in the Court's Order dated November 21, 2005,

5

prompted Centennial's renewed motion for summary judgment. (Support Brief at 12). Specifically, Centennial points to the Court's statement that "the fact that the fill opening may be adjacent to the center of Centennial's tank does not preclude the fill opening from being adjacent to the corner of the tank as well." (Order at 9).

Centennial cites *General American Transportation Corp. V. Cryo-Trans, Inc.,* 93 F.3d 766 (Fed. Cir. 1996), where the Federal Circuit Court of Appeals construed the term "adjacent" as it related to a patent for a cryogenic refrigerated railcar. In *General American*, the Federal Circuit stated: "an opening 'adjacent' to a side wall cannot also be adjacent to an end wall." *Id.* at 770. The Court also stated: "[e]ach opening is 'adjacent' to only one wall, the nearest one to which it directs the downward flow of [carbon dioxide] gas." *Id.* The Federal Circuit's statements regarding the patent at issue in *General American* do not contradict this Court's statements in the November 21, 2005 Order, and furthermore, the claim construction in *General American* was fact-specific to the patent at issue in that case.

Centennial argues that because the fill opening on the Centennial tank is located six inches from the center of the tank and eleven inches from the corner edge of the tank and the width of the tank is thirty-four inches, the fill opening cannot be adjacent to the corner. (Support Brief at 14). Carlson does not concede that physical measurements are determinative of the question of infringement and argues that the term "corner" should be construed to include "the square-shaped piece joining the walls," not just the outermost edge of the tank's corner. (Opposition Brief at 9). Carlson cites to the '785 Patent, which refers to "square upright corners 27, 28, 29 and 30" and states that the "top of the corner

6

28 has a fill opening . . . ," to support his contention that the term "corner" is not limited to the outermost edge.  (Filing No. 44-3 ("'785 Patent") at P. 10, Col. 2, Ln. 34-36; P. 11, Col. 3, Ln. 6-7).  Under Carlson's proposed claim construction, he claims the distance between the fill opening and the inner edge of the corner on Centennial's tank is approximately five inches.

The Court declines to revise its prior construction of the term "adjacent" and maintains that based on the Court's construction of the term, a jury could find that Centennial's tank literally infringes the challenged claim limitation.

Centennial also argues that the Centennial tank does not infringe the '785 Patent because the corner on Centennial's tank "does not have a space below the one corner which is vertically aligned with the liquid fill opening to allow a liquid to be placed in a chamber of a container having a fill opening below the space below the bottom portion of the said one corner."  (Support Brief at 15).  In the November 21, 2005 Order, the Court agreed with Carlson's proposed claim construction, stating:

> [T]he surrounding claim language necessitates the conclusion that the breadth of the space contemplated by the invention extends to a point adjacent to the corner - namely, if the fill opening is adjacent the one corner, and the space is to be vertically aligned with the fill opening, it follows that the space must also be adjacent the one corner.

(Order at 10).  The Court again affirms this proposed claim construction and finds there are issues of fact precluding summary judgment.  Because a jury could find that Centennial's tank literally infringes the challenged claim limitations, the Court denies Centennial's Renewed Motion for Summary Judgment on the issue of literal infringement.

7

***Doctrine of Equivalents***

In addition to literal infringement, an accused product may infringe a patent claim under the "Doctrine of Equivalents." Under this doctrine, an accused product that does not infringe a patent claim literally, may still infringe the patent claim if the accused product "performs substantially the same function in substantially the same way to produce the same result." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608 (1950). "The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 733 (2002). To establish infringement under the doctrine, the accused product must contain each limitation of the claim or its equivalent. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17 (1997). "An element in the accused product is equivalent to a claim limitation if the differences between the two are insubstantial." *Aquatex Industries, Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005).

Under prosecution history estoppel, a patent owner may be estopped from relying on the Doctrine of Equivalents if he or she made a "narrowing amendment for purposes of patentability, or clearly and unmistakably surrender[ed] subject matter by arguments made to an examiner." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002). In *Festo Corp* the Supreme Court determined that an amendment made for purposes of patentability does not completely bar the patentee from relying on the doctrine of equivalents. Instead, the Court stated "the patentee should bear the burden of showing that the amendment does not surrender the particular equivalent in question."

8

*Festo*, 535 U.S. at 740.  The Court further stated that when an amendment is made for purposes of the patentability, "the question is not whether estoppel applies but what territory the amendments surrendered," and the patent holder must "demonstrate that the narrowing amendments did not surrender the particular equivalents at issue." *Id.* at 741.

For estoppel to apply, the prosecution history must "evince a clear and unmistakable surrender of subject matter," "not an equivocal one." *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 170 F.3d 1373, 1377 (Fed. Cir. 1999) (citing *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1458 (Fed. Cir.1998)).  "To determine what subject matter has been relinquished, an objective test is applied, inquiring whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir.1998) (en banc).

Centennial's Doctrine-of-Equivalents arguments in its brief in support of its renewed summary judgment motion are the same arguments it made in its prior brief in support of summary judgment. Centennial once again contends that based on the prosecution history of the '785 Patent, "the applicant relied upon the corner positioning of the fill opening in an effort to avoid the prior art."  (Support Brief at 18).  In its November 21, 2005, Order, this Court stated:

> The Court agrees with Carlson that the relevant amendment language focuses on the vertical alignment of the fill opening with the space, so that the stacked tanks can be filled without unstacking the tanks, distinguishing it from the Richter Patent.  (Filing No. 22-8 at 48).  The Court finds that Carlson did not surrender the equivalent at issue.  *See Festo,* 535 at 738 (stating "there is no reason to "foreclose claims of equivalence for aspects of the invention that have only a peripheral relation to the reason the amendment was submitted").  Therefore, the Court finds that Carlson is not barred from relying on the Doctrine of Equivalents with respect to the location of the fill opening.  Material issues of fact remain for the jury regarding whether the accused product "performs substantially the same function in

9

substantially the same way to produce the same result," and whether the difference between the location of the fill opening on Centennial's tank and '785 Patent constitutes an "insubstantial alteration" not captured in drafting the original patent claim.  *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 608 (1950); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 733 (2002), *see also See Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed. Cir.1998) (stating that the "determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact").

(Order at 13-14).  The Court affirms this statement and again denies Centennial's summary judgment motion on the issue of infringement under the Doctrine of Equivalents.

For the reasons stated in this memorandum,

IT IS ORDERED:

Centennial Molding, LLC's Renewed Motion for Partial Summary Judgment (Filing No. 40) is denied.

Dated this 14th day of February, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

10